**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK BANKS** | : | **CIVIL ACTION NO. 1:06-CV-01396** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NICKLIN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>MEMORANDUM</u>

Presently before the court is a motion to dismiss the <u>Bivens</u>[1]-styled complaint of plaintiff Frederick Banks ("Banks"), or, in the alternative, for summary judgment, filed on behalf of several prison officials from the Federal Prison Camp at Canaan ("FPC-Canaan" or "USP-Canaan") in Waymart, Pennsylvania (collectively, "defendants").[2]  (Doc. 20.)  For the reasons set forth below, the motion for summary judgment will be granted.

---

[1] <u>Bivens</u> actions are the federal counterpart to § 1983 claims brought against state officials.  <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004) (citing <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relief upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a <u>Bivens</u> claim against federal officials."  <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Named as defendants are Cameron Lindsay, warden of USP-Canaan; Julie Nicklin, camp administrator; Al Farley, inmate systems supervisor; Donna Henke, business administrator; Thomas Diehl, trust fund supervisor; and Kathy Kuram, accounting technician.

I.   **Statement of Facts**

The allegations in Banks' complaint relate to events occurring between July 10 and 12, 2006 at FPC-Canaan.  The gravamen of Banks' claims is that defendants denied him the constitutional right of access to the courts and retaliated against him.  Specifically, Banks alleges that defendants "set out to purposely obstruct Banks' criminal and civil actions because of his class-based status in Pennsylvania as a African-American."  (Doc. 1 at 1.)  In addition, defendants allegedly "froze" his inmate account in retaliation for his lawsuits filed against FPC-Canaan officials, and in order to prevent him from filing additional lawsuits and acquiring stamps.  (Doc. 1 at 2.)  Further, defendants refused to accept an incoming package containing Banks' trial transcripts, allegedly in retaliation for Banks' pending lawsuits against FPC-Canaan officials.  (Id.)  Finally, Banks claims that he was placed in the Special Housing Unit ("SHU") on July 12, 2006, in retaliation for, and in order to, prevent him from "exercising his legal rights."  (Id.)

The record shows that between May and August of 2006 Banks filed twenty-four (24) requests for administrative remedy from FPC-Canaan on various topics and to various levels, including both the Northeast Regional and Central Offices.[3]

---

[3] Defendants have submitted the declaration of L. Cunningham, supervisory attorney at the United States Penitentiary at Lewisburg, Pennsylvania, which verifies the accuracy of all the administrative remedies pursued by Banks, and the responses thereto, while he was incarcerated at FPC-Canaan.  (Doc. 21-3 at 3-5.) Also attached as exhibits are the relevant SENTRY computer-generated records of Banks' exhaustion attempts.  (Id. at 6-17.)

(Doc. 21-3 at 6-17.)  None of those requests pertains to Banks' claims in the complaint.[4]

### A.    Race-Based Equal Protection Claim

Banks' complaint contains only a conclusory statement in support of his claim that defendants hindered his access to the courts because of his race.  That statement reads, "Defendants conspired to punish and inflict harm on Banks for filing grievances and lawsuits against [FPC-]Canaan and set out to purposely obstruct Banks' criminal and civil actions because of his class-based status in Pennsylvania as an African-American."  (Doc. 1 at 1.)  He provides no evidence of such treatment based on his race in his complaint.  In his response to the instant motion, Banks simply reiterates this blanket claim with no supporting evidence.

### B.    "Frozen" Inmate Account

Banks claims that FPC-Canaan officials have denied him access to the courts by "freezing" his inmate account in retaliation for lawsuits he had filed against them, and in order to prevent him from filing additional lawsuits and purchasing stamps.

Attached to his complaint is a inmate request to staff form, filed by Banks and dated July 11, 2006, addressing this issue.  (Doc. 1 at 4.)  In the request form,

---

[4] Thirteen of the twenty-four requests were received by either FPC-Canaan officials or the Northeast Regional office after July 10, 2006.  These requests range in topics such as placement of a phone book in the law library, overcrowding in the prison facility, medical care, access to land for religious purposes, job placement, and a request that photographs of visitors be prohibited.  (See Doc. 21-3 at 11-17.)

Banks asks "why my account is frozen when my debt encumbrances have been paid . . . ." (Id.)  Defendant Kuram responded the following day, informing Banks that he continues to have two debt obligations, one pursuant to the PLRA for payments of court filing fees, and the other pursuant to his BP-199s, or requests for withdrawal of inmate personal funds.  (Id.)

Banks alleges that his inmate account was "frozen" at the direction of defendant Nicklin.  (Doc. 5 at 1.)  He claims to have knowledge of this directive as a result of a meeting he had with defendant Nicklin and others on July 12, 2006, to discuss his "frozen" account.  (Doc. 1 at 1.)  In response, defendants have submitted a declaration made under penalty of perjury of defendant Julie Nicklin.  (Doc. 21-3 at 24-25.)  Defendant Nicklin recalls having several conversations with Banks regarding his inmate account.  (Id. at 24.)  She explained that although she does not personally administer inmate accounts, she informed Banks that the debt encumbrances which he alleged "froze" his inmate account were actually withdrawals for payments of filing fees for the multiple lawsuits he has pending in various courts.  (Id.)  She also reminded Banks that he had previously authorized those withdrawals.  (Id.)

Attached to her declaration is a copy of the transaction record from Banks' inmate account.  A review of the account for the relevant time period indicates that funds were withdrawn for his PLRA obligations, debts owed to the government, postage, and commissary sales.  (Id. at 27-29.)  In addition, a payroll check was deposited during that time period.  (Id. at 27.)  The day after Banks filed the inmate

4

request to staff form, funds were deducted for the purchase of postage stamps. (Id.) However, at the time Banks filed the present action, he stated that his inmate account "was never unfrozen."  (Doc. 12 at 2.)

## C. Rejection of Legal Mail

Banks also claims that defendants denied him the right of access to the courts when they rejected an incoming package containing legal materials in retaliation for lawsuits Banks had filed against him, and in order to prevent him from filing further lawsuits.  He also claims that the package was rejected in order to prevent him from pursuing an appeal.

Defendants have submitted a declaration made under penalty of perjury of defendant Farley, which details the refusal of Banks' incoming package at issue in the complaint.  (Id. at 20-21.)  Defendant Farley recalls that the incoming package addressed to Banks did not arrive at FPC-Canaan with a package authorization form or a stamp indicating that it was legal mail.

The Bureau of Prisons ("BOP") Program Statement 5800.10, Mail Management Manual, at Chapter 3, page 9, provides that, "All incoming inmate property packages must be authorized in advance unless otherwise approved under another Bureau policy.  An Authorization to Receive Package or Property, BP-331 (BP-S331) shall be used for this purpose."  (Id. at 23.)  While the policy provides that legal materials need not be pre-approved, they must be marked with words such as "Authorized by Bureau Policy," intending to alert mail room staff that the materials do not require prior approval.  (Id.)  The policy further provides that, "[a] package

5

received without an appropriately completed BP-331, or without markings indicating authorized materials enclosed, is considered unauthorized and shall be returned to the sender." (Id.)

Banks' package did not have a package authorization form or a stamp marking it as legal mail.  Pursuant to BOP policy, it was refused and returned to the sender.  (Id. at 20.)  The package was not opened, nor were its contents inspected at any time prior to its refusal.  (Id.)

In his response to the instant motion, Banks asserts that his counsel did complete a BP-331 form, but placed it inside the package rather than in plain view for FPC-Canaan staff inspection and approval.  (Doc. 23 at 2.)

### D.     Placement in the SHU

Finally, Banks claims that defendants denied him the right of access to the courts by placing him in the SHU in retaliation for lawsuits Banks had filed against them.  In support, Banks claims that on July 12, 2006, defendant Nicklin had a mental breakdown when she called him into a meeting, and subsequently placed him in administrative custody in the SHU.  (Doc. 1 at 1-2.)  Banks avers that defendant Nicklin informed him that he would be placed in administrative segregation pending an investigation of his allegations against FPC-Canaan staff.  (Doc. 5 at 1.)  He further alleges that defendant Lindsay approached him in the SHU, demanding Banks "stop screwing with staff."  (Doc. 12 at 1.)

Defendant Nicklin addressed Banks' claim in her declaration, submitted as an exhibit to the instant motion.  Nicklin asserts that Banks was placed in non-

6

punitive administrative detention and later transferred to another institution for

security reasons because Banks had informed FPC-Canaan staff that he had

inappropriate personal information about defendant Lindsay and his family

members.  (Doc. 21-3 at 25.)

In his response to the instant motion, Banks counters that he did not have

information on the warden, and that defendants' assertion "is a lie in two respects."

(Doc. 23 at 2-3.)  First, he claims defendants are lying in describing his placement in

the SHU as non-punitive because he had a protected liberty interest in remaining at

the prison camp rather than in the SHU and subsequently at another institution.

Second, he claims defendants are lying because he did not speak with the warden

until after he had been placed in the SHU.

## II.    **Standard of Review**

### A.    **Motion to dismiss**

Defendants have filed a motion which, in part, seeks dismissal of the

complaint on the grounds that Banks' complaint fails to state a claim upon which

relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  The motion, however, goes beyond a simple motion to dismiss under

Rule 12(b)(6) because it is accompanied by evidentiary documents outside the

pleadings contravening Banks' claims.  Rule 12(b) provides, in pertinent part, as

follows:

> If, on a motion asserting the defense numbered (6) to dismiss for
> failure of the pleading to state a claim upon which relief can be
> granted, matters outside the pleading are presented to and not

7

> excluded by the court, the motion shall be treated as one for summary
> judgment and disposed of as provided in Rule 56, and all parties shall
> be given reasonable opportunity to present all material made pertinent
> to such a motion by Rule 56.

FED. R. CIV. P. 12(b).  The court will not exclude the evidentiary materials accompanying defendants' motion to dismiss because Banks also has been given a reasonable opportunity to present material relevant to the motion.  Thus, defendants' motion to dismiss, or, in the alternative, for summary judgment, will be treated solely as seeking summary judgment.

> ### B.     Summary judgment

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury."  <u>Pappas v. City of Lebanon</u>, 331 F. Supp 2d 311, 315 (M.D. Pa. 2004).  Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim.  FED. R. CIV. P. 56(e); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Corneal v. Jackson Twp.</u>, 313 F. Supp 2d 457, 464 (M.D. Pa. 2003).  "Such affirmative evidence - regardless of whether it is direct or circumstantial - must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989).  Only if this burden is met can the cause of action proceed.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51 (1986); <u>see</u> FED. R. CIV. P. 56(c), (e).

8

III.   **Discussion**

A.   **Exhaustion of Administrative Remedies**

Defendants seek to dismiss Banks' complaint on the grounds that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).

The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process.  See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Nyhuis, 204 F.3d at 71.  The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing

suit in federal court.  Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006).  "Proper

exhaustion demands compliance with an agency's deadlines and other critical

procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings."  Id. at 2386.

Such requirements "eliminate unwarranted federal-court interference with the

administration of prisons, and thus seeks to 'affor[d] corrections officials time and

opportunity to address complaints internally before allowing the initiation of a

federal case."  Id. at 2387 (quoting Nussle, 534 U.S. at 525).  Failure to substantially

comply with procedural requirements of the applicable prison's grievance system

will result in a procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32

(3d Cir. 2004).

     A prisoner does not have to allege in his complaint that he has exhausted

administrative remedies.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Failure to

exhaust available administrative remedies is an affirmative defense.  Id.  Therefore,

it must be pleaded and proven by the defendants.  Brown v. Croak, 312 F.3d 109,

111 (3d Cir. 2002).

     An inmate may challenge any aspect of his or her confinement using the

BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et*

*seq.*  An inmate first must informally present his complaint to staff, and staff shall

attempt to informally resolve any issue before an inmate files a request for

administrative relief.  28 C.F.R. § 542.13(a).  If unsuccessful at informal resolution,

the inmate may raise his complaint with the warden of the institution where he is

confined.  Id. at § 542.14(a).  If dissatisfied with the response, he may then appeal an

adverse decision to the Regional Office and the Central Office of the BOP.  Id. at §§

542.15(a) and 542.18.  No administrative appeal is considered finally exhausted until

a decision is reached on the merits by the BOP's Central Office.

Defendants claim that the record of Banks' requests for administrative

remedies after July 10, 2006, demonstrates that he has not properly exhausted all

available administrative remedies with respect to the instant Bivens claims, and

therefore, summary judgment should be granted in their favor.  Defendants

contend that Banks did not file a timely grievance in this matter.[5]  Rather, Banks

immediately filed a complaint in this court.  Defendants observe that the instant

complaint was docketed on July 17, 2006, just five (5) days after the alleged conduct

occurred.  In support of their arguments, defendants have submitted the SENTRY

records indicating other grievances filed by Banks during the relevant time period.

None of those grievances relate to the claims raised in Banks' complaint.

Defendants have also submitted a declaration made under penalty of perjury

of Marc A. Renda, a case manager at FPC-Canaan, who recalled Banks' request for

informal resolution forms and Banks' subsequent failure to retrieve those forms.

Renda states that Banks sent him a request for seventy-five (75) BP-8's (informal

resolution forms) on July 9, 2006.  (Doc. 21-3 at 18.)  On July 11, 2006, Renda

---

[5] Defendants note that an inmate has twenty (20) calendar days from the date
on which the basis for a remedy request occurred to initiate that remedy request
with the warden of the institution where the inmate is confined.  (See Doc. 21-1 at
10 (citing 28 C.F.R. § 542.14)).

11

responded to the request, informing Banks that "[i]nmates have the responsibility

to use [the informal resolution program] in good faith and in an honest and

straightforward manner." (Id. at 19.)  Renda directed Banks to see him for the

requested forms, but Banks never picked them up.  (Id. at 18.)

      In his complaint and brief in opposition to the instant motion, Banks alleges

a very different set of facts regarding his efforts to avail himself of the grievance

system at FPC-Canaan.  He claims that he requested informal resolution forms

from case manager Renda, but it was Renda who refused to provide him with the

forms, not Banks who failed to retrieve the forms.  (Doc. 1 at 3.)  He claims that

when he met with Renda and defendant Nicklin on July 12, 2006, and requested the

forms again, he was immediately placed in the SHU, and thereafter thwarted in his

pursuit of administrative remedies.  Banks does not dispute the veracity of the

exhibits filed by defendants in support of their motion, but claims that those

remedies received by FPC-Canaan officials after July 10, 2006, were sent by Banks

prior to Renda's refusal to provide him with informal resolution forms after July 10,

2006.[6]  He concedes that he was able to file administrative remedies on "other

issues," presumably prior to his placement in the SHU, but with regard to the

instant complaints, defendants refused to issue him additional forms "for fear of

this very lawsuit." (Id. at 1.)

---

[6] Notably, the SENTRY records only note the date remedies are received, not
the date submitted.  (See Doc. 21-3 at 6-17.)

To be sure, Banks does not allege futility because the system could not provide him with his desired relief.  Rather, Banks' primary argument is that administrative remedies were not "available" to him, because defendants refused to provide him with the requested administrative remedy forms after he had been placed in the SHU.  See 42 U.S.C. § 1997e(a); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (asserting that under the PLRA, a prisoner need only exhaust such administrative remedies as are "available").

After reviewing the record in the light most favorable to Banks, as it must in deciding a summary judgment motion, the court finds that, at this complaint stage, Banks' allegations are entitled to a presumption of truthfulness and have stated a viable defense for failure to exhaust.  See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that prison officials' action preventing inmate from using grievance system rendered administrative remedies "unavailable").  At this juncture, defendants' charge that Banks did not exhaust his administrative remedies fails as a matter of law and the court will deny defendants' motion for summary judgment.

### B.   *Respondeat Superior*

Defendants contend that defendant Lindsay should be dismissed from the action because Banks names him in the complaint solely because of his position as warden of FPC-Canaan.  It is well-established that personal liability in a civil rights action cannot be imposed upon a governmental official based on a theory of *respondeat superior*.  See Rizzo v. Goode, 423 U.S. 362, 372-73 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).  Furthermore, each

13

named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which the plaintiff's claims are based.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  As explained in Rode,

> A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Id. (citations omitted).

Here, Banks names defendant Lindsay in the supplements to the complaint. (See Doc. 15.)  Banks cites specific dates and conversations he had with defendant Lindsay in support of his contention that defendant Lindsay, along with the other defendants, acted in violation of Banks' constitutional rights.  (Doc. 12.)  In the instant motion, defendants contend that Banks merely names defendant Lindsay in the caption of this action, without asserting any personal knowledge, involvement, or acquiescence by him in the purported constitutional misconduct.  (See Doc. 21-1 at 16-17.) Clearly, defendants' reading of the complaint and its supplements is mistaken.  Consequently, the motion for summary judgment based on the theory of *respondeat superior* shall be denied with respect to defendant Lindsay.

14

### C.   Qualified Immunity

Defendants next claim that they are entitled to summary judgment because no reasonable official could find their conduct to be illegal, thus entitling them to qualified immunity from damages[7] on all of the claims.

The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a

---

[7] As defendants note, Banks also seeks injunctive relief in his complaint. (Doc. 1 at 3.)  It is well recognized that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy."  Steffel v. Thompson, 415 U.S. 452, 459 (1974).  "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  Id. at 459 n.10 (citations omitted).  "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects."  Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).  A prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional.  Abdul-Akbar v. Watson, 4 F.3d 195, 206-207 (3d Cir. 1993); see also Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.").

Banks was transferred out of FPC-Canaan on August 7, 2006, and is currently incarcerated at the Federal Correctional Institution in Yazoo City, Mississippi ("FCI-Yazoo City").  (See Doc. 26.)  There is nothing in the record to suggest that there exists a reasonable probability of his return to FPC-Canaan in the foreseeable future.  Consequently, Banks' claim for injunctive relief is moot and will be dismissed.  See Fortes v. Harding, 19 F. Supp.2d 323, 326 (M.D. Pa. 1998) ("Fortes' transfer to another institution moots any claims for injunctive or declaratory relief.").  However, the court recognizes that a prisoner's transfer or release does not moot his claims for damages.  See Muslim v. Frame, 854 F. Supp. 1215, 1222 (E.D. Pa. 1994) (stating "an alleviation of an alleged unconstitutional condition does not moot a prisoner's claim for actual and punitive damages").

reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999);

Saucier v. Katz, 533 U.S. 194, 200-01 (2001). This doctrine provides not only a

defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227

(1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

    To gain the protection of the doctrine, the defendant must show either that

(1) the plaintiff has not demonstrated "a deprivation of an actual constitutional

right" or (2) the right at issue was not "clearly established at the time of the alleged

violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999); see also Doe v. Groody, 361

F.3d 232, 237-38 (3d Cir. 2004); accord Wright v. City of Philadelphia, 409 F.3d 595,

600 (3d Cir. 2005) (noting that six Courts of Appeals have ruled that the first step in

qualified immunity analysis is whether a constitutional violation has occurred). A

right is clearly established if "it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

    When immunity is raised at the summary judgment stage, the court's analysis

of the merits of the claims for purposes of summary judgment essentially merges

with its analysis of a deprivation of federal rights for purposes of immunity. See

Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126

F. Supp 2d 821, 838-41 (E.D. Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d

116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified

immunity is a careful examination of the record . . . to establish . . . a detailed factual

description of the actions of each individual defendant (viewed in a light most

favorable to the plaintiff)").

16

Proceeding under the above framework, the court will first examine Banks'
claim that defendants have denied him the constitutional right of access to the
courts by committing other unconstitutional acts.[8]  Banks asserts that defendants
committed these unconstitutional acts in order to "purposely obstruct Banks'
criminal and civil actions."  (Doc. 1 at 1.)  Those acts include denying Banks equal
protection based on his race, "freezing" his inmate account in order to prevent him
from filing additional lawsuits, refusing to accept his legal mail, and placing him in
the SHU, all in retaliation for Banks' filing of civil cases against them.  The court
will analyze these claims in turn.

### 1.    Banks' Race-Based Equal Protection Claim

As stated above, Banks claims that defendants have denied him access to the
courts by intentionally "obstructing" his criminal and civil actions because of his
race.  After review of the record, the court concludes that this claim fails.

The Equal Protection Clause of the Fourteenth Amendment requires all
persons "similarly situated" to be treated alike by state actors.  See City of
Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  While the Fifth
Amendment contains no equal protection clause, the due process clause contains
an equal protection element, proscribing racial discrimination to the same extent as
the Fourteenth Amendment equal protection guarantees.  See Washington v. Davis,

---

[8] In order to state a claim for denial of this right, an inmate must plead that
he has suffered an "actual injury" arising from the challenged conduct of prison
officials.  Lewis v. Casey, 518 U.S. 343, 349-50 (1996).

426 U.S. 229, 239 (1976).  Therefore, the court will analyze Banks' equal protection claims under Fifth Amendment utilizing the analytical framework established under the Fourteenth Amendment.

To prevail here, Banks must show that both he was treated differently from persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental.  Id.; Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 423-24 (3d Cir. 2000).  Banks specifically contends that defendants violated his right to equal protection by intentionally obstructing his criminal and civil actions because of his "class-based status in Pennsylvania as an African American."  (Doc. 1 at 1.)  However, Banks presents no evidence whatsoever in support of this contention in his response to the instant motion.  Based on the complete lack of evidence, Banks has not shown that defendants have treated him differently from those who are similarly situated and that such discrimination was intentional.  Therefore, qualified immunity shields defendants from suit on this issue.

### 2.    "Frozen" Inmate Account

Banks also claims that defendants have denied him access to the courts by "freezing" his inmate account in retaliation for lawsuits he filed against them, and in order to prevent him from filing additional suits and from purchasing stamps. After careful review of the record, the court has determined that this claim fails.

Pursuant to 28 U.S.C. § 1915(b),

  (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil
action or files an appeal in forma pauperis, the prisoner shall be
required to pay the full amount of a filing fee.  The court shall assess
and, when funds exist, collect, as a partial payment of any court fees
required by law, an initial partial filing fee of 20 percent of the greater
of –
          (A) the average monthly deposits to the prisoner's account; or
          (B) the average monthly balance in the prisoner's account for
the 6-month period immediately preceding the filing of the complaint
or notice of appeal.
  (2) After payment of the initial partial filing fee, the prisoner shall be
required to make monthly payments of 20 percent of the preceding
month's income credited to the prisoner's account.  The agency having
custody of the prisoner shall forward payments from the prisoner's
account to the clerk of court each time the amount in the account
exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(1)-(2).

In his inmate request to staff dated July 11, 2006, regarding this issue, Banks

appears to be claiming that his account has been "frozen" due to an overpayment of

his debt encumbrances for his PLRA filing fees and debts owed to the government.

(Doc. 1 at 1.)  In her response to this request, defendant Kuram explained to Banks

that his encumbrances were frozen, presumably following the deposit of his payroll

check on July 10, 2006, in order to calculate the monies to be deducted for purposes

of paying his debts owed.  (Id.)  She further explained, "[A]ny monies you receive

will go towards the debts 1st and anything left will be yours.  For PLRA's which you

have 5 active contracts now, you will pay only 20% of each when funds come in.

BP-199's gets the remainder until paid in full."  (Id.)

After a review of Banks' inmate account, attached to defendant Nicklin's declaration, the court concludes that defendant Kuram's response to Banks was not in error.  Banks received a payroll deposit on July 10, 2006, at 09:26:08 AM, giving him a new balance of $89.13.  (Doc. 21-3 at 27.)  At that very same moment, the TRUFACS system, which administers the inmate accounts, calculated Banks' debt encumbrance payments.  (Id.)  The account balance column is blank with respect to those calculations.  (Id.)  It appears that funds for payments of those encumbrances were deducted, and then released.  The account also shows that Banks was able to purchase postage on July 11, 2006.  (Id. at 26-27.)  Since it is apparent that Banks was able to deduct funds from his inmate account on the very day that he submitted the inmate request to staff, the court concludes that his inmate account was not "frozen."  Based on the clear record evidence, it cannot be said that defendants intentionally "froze" Banks' inmate account in order to deny him access to the courts.  Therefore, qualified immunity shields them from suit on this issue.[9]

### 3.      Rejection of Legal Mail

Banks claims that defendants have denied him the right of access to the courts by rejecting an incoming package containing legal materials in retaliation for

---

[9] Because the record shows that the conduct of defendants did not lead to the denial of Banks' right of access to the courts, the court need not address whether defendants were retaliating against Banks.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) ("As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected.") (citing Thaddeus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999)).

lawsuits he had filed against them.  Based on the record, the court concludes that this issue has no merit.

"[P]risoners have a constitutional right of access to the courts."  <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).  Again, in order to state a claim for denial of this right, Banks must plead that he has suffered an "actual injury" arising from the challenged conduct of defendants.  <u>See</u> <u>Lewis</u>, 518 U.S. at 349-50.

In this case, Banks claims that he initially obtained a BP-331 form for attachment to his incoming mail, to be sent by his counsel.  (Doc. 23 at 2.)  However, it is undisputed that the form was not attached to the package upon receipt in FPC-Canaan's mail room.  While defendants assert that the form was simply not attached, Banks claims that it was inside the package.  Prison officials will not open a package without an authorized BP-331 form.  Thus, the court declines to fault defendants for rejecting the package without a BP-331 form.  Because any injury suffered by Banks with respect to this claim did not arise from unconstitutional conduct of defendants, Banks' claim fails and qualified immunity shields defendants from suit on this issue.[10]

---

[10] Because the record shows that the conduct of defendants did not lead to the denial of Banks' right of access to the courts, the court need not address whether defendants were retaliating against Banks.  <u>See</u> <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001).

### 4.     Placement in the SHU

Banks claims that FPC-Canaan officials denied him the right of access to the courts when they placed him in the SHU in retaliation for the lawsuits Banks had filed against them.  Having reviewed the record, the court finds no evidence in support of this claim.

Pursuant to BOP policy,

> The Warden may . . . place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate:
>
> * * *
>
> (2)     Is pending an investigation of a violation of Bureau regulations.

BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, at Chapter 9, p. 6, *available at* http://www.bop.gov/DataSource/execute/dsPolicyLoc.

In response to Banks' complaint on this issue, defendants assert that Banks was not placed in the SHU in retaliation for his lawsuits against them, rather he had made it known that he possessed inappropriate personal knowledge of defendant Lindsay and his family.  In support, defendants direct the court to a request for transfer form filed as an exhibit to a motion in an action brought by Banks and previously before this court.  (See Banks v. Roberts, et al., civil case no. 1:06-cv-01232, Doc. 18-2 at 7.) That request for transfer details the statements made by Banks:

> Mr. Banks recently engaged in a conversation with the Warden of his
> facility, revealing he has an extensive personal knowledge of the
> Warden's personal information.  For example, he stated he was aware
> of the type and model of his vehicle, marital status, college attended,
> and where he resided.  In light of the fact Mr. Banks has an extensive
> history of manipulative behavior, to include attempting to fraudulently
> review the "FOI EXEMPT" section of his central file, and having
> personal knowledge of the Warden's personal information, we request
> transfer to a more secure facility and application of the management
> variable of "greater security."  He requires greater security than that
> of which can be afforded at this institution.

(Id.)

In his response to the instant motion, Banks counters that he did not have information on the warden, and that defendants' assertion "is a lie in two respects." (Doc. 23 at 2-3.)  However, Banks two-part argument is not relevant.  In his first claim, he asserts that defendants' description of his placement in the SHU as non-punitive is a lie because he has a protected liberty interest in remaining at the prison camp rather than in the SHU and subsequently at another institution.  This contention relates to the conditions of his confinement rather than the reason for his confinement in the SHU.  Additionally, he claims defendants are lying because he did not speak with the warden until after he had been placed in the SHU.  It may be true that Banks spoke with the warden while he was in the SHU, but Banks does not assert that this was the conversation which led to his transfer to another institution.  As a result, the alleged "lies" have no bearing on the reason for Banks' placement in the SHU, and thus are not relevant.

Further, Banks concedes that defendant Nicklin informed him that he was being placed in the SHU pending an investigation into his allegations against FPC-Canaan staff.  Pursuant to BOP Program Statement 5270.07, prison officials have the authorization to place an inmate in administrative custody pending such an investigation.  This action is reasonable because there is a legitimate penological interest in keeping Banks and FPC-Canaan staff protected during the ongoing investigation.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (emphasizing that a prison regulation that impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests); see also Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (finding, *inter alia*, that changes in an inmate's location, changes in conditions of confinement, and denials of privileges are necessarily functions of prison management that must be left to the broad discretion of prison administrators).   Based on the record, this custodial action was reasonable and necessary.  Consequently, Banks has not shown that any injury he suffered was the result of the conduct of defendants, and therefore qualified immunity shields them from suit.[11]

---

[11] Because the record shows that the conduct of defendants did not lead to the denial of Banks' right to access the courts, the court need not address whether defendants were retaliating against Banks.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

### 5.      Access to the Courts

Banks' claim for denial of his constitutional right of access to the courts is based on his claims of other unconstitutional acts on the part of defendants. Because the court has found that these other acts do not rise to the level of constitutional violations, Banks' unsubstantiated claim of denial of access to the courts must fail.

## IV.    <u>Conclusion</u>

There is nothing in the record to create a genuine issue of material fact as to whether Banks was denied the constitutional right of access to the courts. Defendants have met their burden of showing that qualified immunity shields them from suit.  Consequently, defendants' motion for summary judgment on Banks' <u>Bivens</u> claim will be granted.

An appropriate order will issue.


  <u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:        September 26, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK BANKS** | : | **CIVIL ACTION NO. 1:06-CV-01396** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NICKLIN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**ORDER**

AND NOW, this 26th day of September, 2007, upon consideration of

defendants' motion for summary judgment (Doc. 20), it is hereby ORDERED that:

1.   Defendants' motion for summary judgment (Doc. 20) is GRANTED.

2.   The Clerk of Court is directed to ENTER judgment in favor of
defendants and against plaintiff.

3.   The Clerk of Court is further directed to CLOSE this case.

4.   Any appeal from this order is DEEMED frivolous and not in good faith.
See 28 U.S.C. § 1915(a)(3).

   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge